**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CERISSA C. NEWBILL,                                    Case No. 1:17-cv-430

       Plaintiff,                                    Barrett, J.
                                                      Bowman, M.J.

   v.


SECRETARY, DEPARTMENT OF TREASURY,

       Defendant.


## REPORT AND RECOMMENDATION

On June 30, 2017, Plaintiff was granted leave to proceed *in forma pauperis* and initiated this employment discrimination case against her employer. The Court subsequently attempted to obtain counsel for Plaintiff through the Volunteer Lawyers Project, but after no counsel could be found to undertake her case, Plaintiff was informed that she must continue to prosecute her case *pro se*.[1] (*See* Docs. 5-7, 9-10).

### I.    Plaintiff's Complaint

Plaintiff is employed by the Internal Revenue Service ("IRS"). In a complaint filed in this Court, she alleges race-based discrimination, a hostile work environment, and retaliatory actions taken after she complained of discrimination.

More specifically, Plaintiff complains about a "Letter of Admonishment" issued on July 23, 2012, while she was being supervised by Barbara Wells. Plaintiff also alleges that "management" has denied her "promotion opportunities" on an on-going basis. On

---

[1] Plaintiff continues to assert that she has been "unable financially to obtain legal representation on her own" as a result of Defendant's "discrimination" in this case. However, the same Plaintiff has retained counsel in an unrelated civil rights case pending in this Court, *Newbill v. Neville, et. al.*, Case No. 1:16-cv-527.

February 26, 2013, Plaintiff was reassigned to the day shift at her request. After being moved, she alleges she was subjected to a hostile work environment under her new manager, Jeffrey McSayles, in retaliation for her prior protected activity. (Doc. 3). Both Barbara Wells and Jeffrey McSayles are African-American, as is Plaintiff.

Plaintiff attached to her federal complaint a copy of the decision denying her appeal from the Equal Employment Opportunity Commission's June 10, 2015 final order. That decision reflects that in her administrative proceedings, Plaintiff had requested a hearing before an EEOC Administrative Judge ("AJ"), who found Plaintiff to be "largely not credible as a witness." (Doc. 3 at 5). Ultimately, the AJ concluded that Plaintiff had not established that she was subjected to disparate treatment or a hostile work environment based on race and had not been subjected to retaliatory harassment. The AJ held that the Plaintiff had failed to show that the Agency's actions constituted a violation of Title VII, and the agency subsequently issued a June 10, 2015 final order concluding there was no discrimination or retaliation. (Doc. 3 at 7). In an EEOC decision dated March 24, 2017, the Commission affirmed that final order, including the factual findings made by the AJ as supported by substantial evidence in the record. Following that adverse decision, Plaintiff timely initiated this civil action.

Discovery closed on June 1, 2018, and Defendant subsequently moved for summary judgment. (Doc. 24). Defendant's motion is supported by 30 individual exhibits, including declarations and other evidence submitted during the course of the earlier administrative proceedings. When Plaintiff initially failed to file any timely response to Defendant's motion, she was ordered to "show cause" why Defendant's motion should not be construed as unopposed and granted for the reasons stated. (Doc. 25). Plaintiff

thereafter filed a response in opposition to summary judgment, including 164 pages of exhibits. (Doc. 26). Defendant has filed a reply. (Doc. 28).

For the reasons stated below, the undersigned now recommends that Defendant's motion be GRANTED.

## II.    Standard of Review

In a motion for summary judgment, a court must view "the facts and any inferences that can be drawn from those facts…in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks and citation omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's unsupported allegations. If a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party

must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita*, 475 U.S. at 587, inferences are not to be drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*, 475 U.S. at 586-587 (citation omitted).

To the extent that the Defendant has shown that Plaintiff lacks evidence on an essential element of any of her claims, the burden shifts to Plaintiff to set forth "specific facts showing that there is a genuine issue for trial." *Id.*, at 587. At this point, Plaintiff may not rely solely on her subjective beliefs or opinions. *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008). She may not show only that some hypothetical doubt exists as to the facts. *See Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). Based on the relevant standards, the Defendant is entitled to judgment as a matter of law on all claims.

### III. Findings of Fact[2]

Plaintiff began her employment as a tax examining technician with the IRS in Covington, Kentucky in 2008. Up until February 26, 2013, Plaintiff worked on the night, or "swing" shift. Barbara Wells was Plaintiff's first-level supervisor on the swing shift through December 2012. Jeffrey McSayles became Plaintiff's first-level supervisor after

---

[2]Only Defendant submitted a statement of undisputed facts. However, the undersigned has carefully evaluated all evidence, including Plaintiff's exhibits. To the extent that any disputes exist, all reasonable inferences have been construed in Plaintiff's favor.

Plaintiff transferred to the day shirt in February 2013. Although Wells and McSayles are African-American, both of them report to the Department Manager, Grace Bay. Bay, who is Caucasian, is therefore Plaintiff's second-level supervisor.

On May 23, 2012, Plaintiff, along with co-workers Clarissa Cody and Yolanda Campbell, were involved in a verbal altercation during a non-break time. Although Plaintiff denies raising her voice, Wells filed a declaration stating that all three employees were involved in a "loud" and disruptive argument. Wells informed her supervisor, Ms. Bay, about the incident and Bay advised Wells to contact Labor Relations regarding what steps to take. (Doc. 24-5 at 3, Bay Decl. at ¶13). Bay, Wells, and Labor Relations Specialist Bryan Balser agreed that a counseling memorandum documenting the "unacceptable behavior" should be issued to all three employees, including Plaintiff. The counseling memo was issued on June 13, 2012. (Doc. 24-9 at 3, Wells Decl. at ¶13; *see also* Doc. 24-10). The memorandum warned that "[a]ny future incidents of this nature will result in disciplinary action up to and including removal." (Doc. 24-10).

On June 28, 2012, Plaintiff complained that she had overheard Wells and a white co-worker, Linda Kelly, talking about Plaintiff. Bay, Wells, and Plaintiff met later that day to discuss Plaintiff's concerns that Wells was treating Plaintiff differently than others on the team. Wells told Plaintiff that the conversation she had overheard was in response to a prior complaint that Plaintiff had made to Wells about Kelly. Specifically, Plaintiff had complained that Kelly was trying to find out personal information concerning a grievance that Plaintiff had filed. (Doc. 24-9 at 2, Wells Decl. at ¶7). Wells did not disclose any of Plaintiff's personal information to Kelly. (*Id.*) In response to another complaint Plaintiff expressed, Bay explained her reasoning for allowing three other employees on Wells' team to transfer from swing shift to day shift.

On July 3, 2012, while Kelly was speaking in a group meeting, Plaintiff stated that she wished Kelly would "shut up" in a tone loud enough to be heard by most of the team. (Doc. 24-5 at 3; Doc. 24-9 at 3; Doc. 24-13 at 3). Due to this second workplace disruption, Wells and Bay again contacted Labor Relations and followed procedures for progressive discipline, choosing to issue a Letter of Admonishment to Plaintiff as the least severe corrective measure. (*Id.*) The Letter of Admonishment was issued on July 23, 2012.

On August 17, 2012, Plaintiff sought pre-complaint EEO counseling, which took place between August 17 and November 6, 2012. After that process failed to resolve Plaintiff's concerns, she timely filed a formal charge of race discrimination on November 29, 2012. Three allegations were accepted for investigation: (1) the July 23, 2012 Letter of Admonishment; (2) that Wells failed to inform Plaintiff of promotional opportunities; and (3) that Wells discussed with Kelly an incident relating to the Letter of Admonishment. (Doc. 24-17).

Promotional opportunities are announced on USAJobs.gov. (Doc. 24-24, Stipulation of Facts). In addition, managers often send out courtesy emails to employees informing them of vacancies. (Doc. 24-5). Wells shared job position openings with her entire team, including Plaintiff, via team meetings and by email. (Docs. 24-19, 24-21, 24-22). Promotions are determined through established vacancy announcement procedures that the IRS's Personnel Office handles, and that Plaintiff's supervisors do not control. (Doc. 24-9). During the time that Wells supervised Plaintiff, there were no promotional opportunities available to Plaintiff or to any Grade 6 Tax Examiners in the Entity Department in which Plaintiff worked. (Doc. 24-9). The only promotional opportunity that Plaintiff would have been eligible for during the entire time period at issue would have

been a Clerical Team manager position, which position would have been posted on USAJobs. (Doc. 24-5).

In February 2012, Wells advised her entire team of an opportunity to switch to day shift. Although Plaintiff did not express interest in a shift change at that time, three other employees did. Bay permitted all three to transfer shifts based on the criteria specified in the 2012 National Agreement II. One of the three was African-American. (Doc. 24-23). From August 2011 through August 2013, Bay received requests from 14 employees to switch shifts; five were African-American and nine were Caucasian. (*Id.*) Bay approved eight of the nine requests submitted by Caucasian employees, and four of the five requests submitted by African-American employees. (*Id.*)

Wells also sent out routine emails to her entire team, including Plaintiff, regarding opportunities to participate in Course Development. (Doc. 24-9). Course Development, like a transfer of shifts, is not a promotion.

At the end of 2012, Plaintiff sought transfer to the day shift. On February 26, 2013, when an opening became available, her request was granted. Jeffrey McSayles became Plaintiff's new supervisor. McSayles had never previously worked with or met Plaintiff but had heard Plaintiff's name mentioned during more than one routine, closed-door weekly manager's meeting. During those meetings, front-line managers generally discuss employee issues or problems they are encountering in their teams and receive guidance from the Department Manager. More than once, Wells had raised concerns about Plaintiff's poor attendance, bad attitude, and misconduct. (Doc. 24-255, McSayles Decl.). Wells never mentioned any EEO issues during the managers' meetings but when she transferred Plaintiff's supervisory file to McSayles, she mentioned in passing that it

included some information relating to a pending EEO complaint that Plaintiff had filed against Wells. Wells made no other comment about the matter. (*Id.*)

When Plaintiff reported to duty to day shift on February 26, 2013, McSayles met with her one-on-one to communicate his expectations, and at one point during the conversation, said "I'm not your previous manager." (*Id.*) Plaintiff perceived his tone as angry or hostile, but McSayles explained that he was clarifying that he had different expectations than Wells, and denies that his tone was "hostile" at that time. (Doc. 24-25).

Plaintiff also alleges, and has submitted the declaration of a co-worker, that McSayles advised the group prior to her arrival that she was a "troublemaker" and that they should not talk to her. McSayles adamantly denies this in his Declaration. (Doc. 24-25). Regardless, there is no dispute that McSayles never spoke of or disclosed Plaintiff's EEO activity to any team member on the day shift. (*Id.*)

The Lead Tax Examiner on the day shift, Lisa Shumaker, and McSayles continue to monitor Plaintiff's work more closely than they do the work of her peers due to Plaintiff's high error rate. (Doc. 24-25 at 2; *see also* Doc. 24-26). Tax examiners work with 6-9 different programs to perform their duties. Initially, pursuant to standard policy that requires close review until a tax examiner demonstrates proficiency in a new program, McSayles also placed Plaintiff on 100% review for work with several programs that she had not used when she was working on the night shift. (Doc. 24-25).

McSayles assigns work to tax examiners based on their levels of proficiency. There are three levels; the first level works on simple forms including Form 2553; the next level works on Form 347. The highest level of work includes Correspondence; Plaintiff has never been trained on or assigned that high level work. (*Id.*)

Bay has never instructed McSayles or Shumaker to assign Plaintiff any particular work, although McSayles generally reports on the status of Plaintiff's progression along with the status of others in his group. (Doc. 24-25). Bay and Wells did advise McSayles that Plaintiff previously had worked with Form 347 on the swing shift. Although the day shift rarely received Form 347s, McSayles assigned those forms to Plaintiff based on her presumed prior experience. However, her work was unsatisfactory, and she claimed she had never been trained on Form 347. Thereafter, McSayles provided Plaintiff with an On-the-Job Instructor ("OJI") to assist her with Form 347 and other forms. Plaintiff's OJI has been Regina Kelly, but Plaintiff has not taken advantage of that training and rarely asks her any questions. (*Id.*; *see also* Docs. 24-27, 24-28 (emails dated 01/23/14)). Shumaker, whose Lead role it is to provide technical assistance to all team members, also has reported that Plaintiff rarely takes advantage of her assistance. (Doc. 24-25).

Plaintiff has attended fewer classroom training courses than her full-time counterparts but has attended training courses as her part-time schedule allows. She attended classroom training on Form 2553 in April and May 2013, and in June 2013, she attended training on Form 2678. Linda Kelly taught one of the classes and stated that Plaintiff interrupted the class by "giggling loudly to where it was impossible to train." During a different class, Plaintiff was disruptive when she left six times in the one-hour class to use her cell phone. (Doc. 24-13 at 2, Kelly Decl.). After Kelly asked her not to continually go in and out, Plaintiff questioned: "Who are you and why do you think you can tell me what to do?" Wells then called security to escort Plaintiff from the classroom back to the office. (*Id.*)

In addition to assigning an OJI to assist Plaintiff, McSayles decreased the number of Form 347s assigned to Plaintiff and reassigned the remainder to others. By letter dated

April 15, 2013, prior to the completion of the original investigation, Plaintiff requested amendment of her EEO complaint to allege retaliatory harassment by McSayles.

## IV. Analysis

### A. Race Discrimination Claim

Title VII prohibits unlawful employment discrimination on the basis of race, or in retaliation for making "a charge…in an investigation, proceeding, or hearing under this title." 42 U.S.C. §§ 2000e-3(a) and 2000e-16(a). Plaintiff alleges that she was discriminated on the basis of her race. In support of her claim, she asserts that: (1) on July 23, 2012, her employer wrongfully issued a Letter of Admonishment relating to workplace misconduct; (2) on July 25, 2012, a manager discussed Plaintiff with another employee; and (3) Plaintiff was denied promotion opportunities by unspecified "management" on unspecified dates. (Complaint; *see also* Doc. 26 at 2). Defendant persuasively argues that it is entitled to summary judgment because there is neither direct nor circumstantial evidence that any of Plaintiff's managers harbored any racial animus against Plaintiff, or even that she was subjected to any adverse employment decision on which a claim of racial discrimination could be based.

Because Plaintiff offers no direct evidence of race discrimination, the familiar *McDonnell Douglas* burden-shifting framework applies to Plaintiff's claims. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). "A plaintiff claiming race-based discrimination supported only by circumstantial evidence must demonstrate that he (1) is a member of a protected class, (2) was qualified for the job at issue, (3) was subjected to an adverse employment action, and (4) was treated differently than a similarly situated nonprotected person." *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) (citing *McDonnell*, 411 U.S. at 802). The fourth element can be

shown either by evidence that a similarly situated worker was treated more favorably, or that the plaintiff was replaced by a person outside the protected class. *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

The record presented shows that Plaintiff can prove only the first and most basic element of her claim – that she is within a protected class. Defendant is entitled to judgment because there is no genuine dispute as to any material fact and Plaintiff cannot prove the remaining three elements of her race discrimination claim.

### 1. No Adverse Employment Action

#### a. Lack of Evidence on Plaintiff's Failure to Promote Claim

Plaintiff generally alleges that "management" denied her "promotion opportunities." The denial of a promotion may constitute an adverse employment action. Here, however, Plaintiff fails to articulate which promotion opportunities (if any) she applied for and failed to receive, on what dates, or that a biased manager made the decision(s). In addition to the absence of relevant details, Plaintiff has failed to point to evidence that she was qualified but denied any promotion on the basis of her race.

In her response in opposition, Plaintiff asserts that she "applied to various positions and continued to be rejected" but fails to point to any of salient details. (Doc. 26 at 8). This Court is not required to search the entire record to look for specific material facts that could support Plaintiff's claim. *Guarino v. Brookfield Twnshp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). Instead, it is Plaintiff's burden to "present affirmative evidence to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Nevertheless, in the interests of justice and recognizing that Plaintiff proceeds pro se, the undersigned has thoroughly reviewed 164 pages of exhibits attached to Plaintiff's memorandum in opposition. Among those exhibits is a

handwritten response to "Declaration Questions" in which Plaintiff alleges that Wells did not inform Plaintiff of "promotional opportunities" when she failed to advise Plaintiff in March 2012 that there was more than one opening available on day shift. (Doc. 26-1 at 7). However, elsewhere in the record, Plaintiff admitted that a transfer of shifts is not a promotion. (Doc. 24-24).

Additional documents among Plaintiff's exhibits refer to Plaintiff's apparently unsuccessful applications between May and December 2012 for the positions of "Agent," "Intake Advocate," "Fraud Investigative Assistant," and "Investigative Analyst." (Doc. 26-1 at 123-127, 130-136). In April and May 2013, she also applied for "Tax Examining Technician" and "Accounting Technician." (Doc. 26-1 at 137-141). In February 2014, she applied for the position of "Lead Tax Examining Technician." (Doc. 26-1 at 128-129). Although some of the documents reflect that she was ineligible or rejected, a few indicate that Plaintiff was placed on a list of "Best Qualified" candidates.[3] The undersigned can infer that Plaintiff did not make the final cut but can find no information about the race or qualifications of the successful candidate. In short, Plaintiff has failed to offer evidence sufficient to prove a prima facie "failure to promote" claim. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (to establish a prima facie case, plaintiff must prove not only that she is a member of a protected class and that she was qualified, but also that she was considered for and denied the promotion and that "other employees of similar qualification who were not members of the protected class received promotions").

---

[3]As stated above, Defendant submitted uncontested evidence that promotions are established through vacancy procedures that Plaintiff's managers did not control. (Doc. 24-9). Wells averred that there were no promotional opportunities available to Plaintiff or to any Grade 6 Tax Examiners in the Entity Department in which Plaintiff worked. (*Id.*; *see also* Doc. 24-5).

Plaintiff maintains that she was "successful in her work" and includes her college transcripts and self-assessment and performance appraisal and recognition election forms from 2008-2012. (Doc. 26-1). The receipt of satisfactory reviews prior to 2012 is not evidence that Plaintiff was the more qualified individual for the various positions she sought.[4] *See Carr v. Murphy Oil USA Inc.*, 269 Fed. Appx. 378, 378-379 (5th Cir. 2008) (affirming summary judgment where plaintiff failed to establish he was qualified because he did not show sufficient progress during the on-the-job training period and multiple supervisors thought he had trouble grasping knowledge necessary to perform the position).

Plaintiff cannot prove that she was the most qualified applicant merely "by relying on her subjective evaluation and comparison of her qualifications" to the selected applicant. *See Hedrick v. Western Reserve Case Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (Plaintiff's "subjective view of her qualifications in relation to those of other applicants, without more, cannot sustain a claim of discrimination."); *see also Sudduth v. Geithner*, 2012 WL 1132748 at *3 (S.D. Ohio April 4, 2012) (granting summary judgment on race discrimination claim) (additional citations omitted). Plaintiff also relies on the affidavits of two co-workers who allegedly had "very similar experiences." (Doc. 26 at 8). However, such opinions are not sufficient to defeat summary judgment. *See Haley v. General Elec. Co.*, 3 Fed Appx. 240, 248 (6th Cir. 2001) ("Without more, mere opinions [as to GE's promotional practices] expressed by co-workers who have no direct involvement in the

---

[4]As Defendant notes, although the early performance reviews are largely irrelevant, the reviews that Plaintiff has attached show that while she "met expectations" she exceeded them only rarely from 2008-2010. (*See, e.g.*, Doc. 26-1 at 55). Plaintiff appears to have obtained her best review In April 2011. Even then, she earned an equal number of "meets" and "exceeds" ratings but was rated as "fails" in "use of time." (*Id.* at 70).

decision-making processes have no probative value as to GE's alleged discriminatory intent.").

In her EEOC complaint, Plaintiff additionally alleged that her manager(s) failed to notify her of promotional job openings posted on USAJobs.gov. Plaintiff asserts that Wells "did not regularly send emails to [Plaintiff] or Clarissa Cody" and shared more information "with the employees she had a personal relationship with and often time would excluded [Plaintiff] and Clarissa." (Doc. 26 at 9, citing Doc. 26-1, Declarations of Plaintiff and Clarissa Cody). Plaintiff maintains that Wells and Bay did not notify Plaintiff of all "internal announcements" and did not give her the "same opportunities [as] co-workers in the same department." (Doc. 26 at ¶¶ 22-23).

For two reasons, Plaintiff's allegation that Wells did not send her adequate notices of internal announcements is insufficient to defeat summary judgment. First, even if true, Wells' alleged failure to communicate as frequently with Plaintiff about generic job openings posted on USAJobs.gov (for which Plaintiff may or may not have been qualified) does not constitute a legally sufficient "adverse employment action."[5] Second, Wells' Declaration and other evidence of record confirms that Plaintiff regularly was provided such email notifications. (Docs. 24-5, 24-9, 24-19, 24-20, 24-21, 24-22). Plaintiff offers no contrary examples (such as any specific email sent to Caucasian employees but not to her) to refute that evidence.

### b. Letter and Conversation Are Not Sufficiently Adverse

Other than the alleged failure to promote claim, Plaintiff points to her Letter of Admonishment and an overheard conversation between Wells and Linda Kelly as

_____

[5]Notably, Plaintiff does not assert that Wells' alleged favoritism reflected racial bias. In the Declaration attached as one of Plaintiff's exhibits, Clarissa Cody denies observing any "harassment [by Wells] based on race." (Doc. 26-1 at 42).

examples of adverse employment actions. However, neither constitutes an "adverse employment action" as a matter of law. "[E]mployment actions that are *de minimis* are not actionable under Title VII." *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (additional citations omitted); *see also Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) ("If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure"). Thus, within the Sixth Circuit, a plaintiff must show a "materially adverse change in the terms and conditions of employment" such as "a decrease in wage or salary, a less distinguished title, a material loss of benefits, or other indices that might be unique to a particular situation," *Blackburn v. Shelby County*, 770 F. Supp.2d 896, 919 (6th Cir. 2011) (citing *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). Plaintiff has presented no evidence that the Letter of Admonishment (much less the overheard conversation) caused Plaintiff to be demoted, paid less, or terminated. *See also Iceberg v. Whole Foods Market Group, Inc.*, 914 F. Supp.2d 870, 881 (E.D. Mich. 2012) (disciplinary warnings for poor job performance were not equivalent to tangible job detriment even if they damaged future chance of promotion); *Duvall v. Putnam City School Dist., Indp. School Dist. No. 1 of Okla. County*, 530 Fed. Appx. 804, 810-811 (10th Cir. 2013) (letter of admonishment not adverse action); *Mora v. Ashcroft*, 142 Fed. Appx. 206 (5th Cir. 2005) (per curiam) (letter of admonishment not sufficiently adverse in absence of evidence that pay, benefits or other material conditions adversely impacted); *Johnson v. Danzig*, 213 F.3d 631 (4th Cir. April 24, 2000) (Table, text at 2000 WL 458887, same); *Runkle v. Gonzales*, 391 F. Supp.2d 210, 225 (D.D.C. 2005).

Defendant is entitled to judgment because neither the Letter of Admonishment nor Wells' conversation with a co-worker amount to a materially adverse change in terms and conditions of employment that is prohibited by Title VII. A "bruised ego" or "mere inconvenience or an alteration of job responsibilities" is insufficient to support a claim. *White*, 364 F.3d at 797 (citing *Kocsis v. Multi-Care Management Inc.*, 97 F.3d 876, 885-886 (6th Cir. 1996)).

In her response in opposition to Defendant's motion, Plaintiff asserts for the first time that on some unspecified date, "Defendant laid her off after her complaints of the on-the-job harassment and she was forced to go nine months without [a] viable income as a result." (Doc. 26 at 3). Termination would constitute an adverse employment action. However, the undersigned finds no similar allegation in the complaint filed in this Court or in the record of the EEOC proceedings attached to Plaintiff's complaint. Absent any evidence of record to support this new allegation (or its inclusion and administrative exhaustion before the EEOC), the undersigned declines to consider it further.[6]

### c. No Showing of Hostile Work Environment

Plaintiff repeatedly accuses her managers of subjecting her to a hostile work environment. To prove such a claim, Plaintiff must show that she was a member of a protected class, that she was subjected to harassment, that the harassment was based on her protected status, that it was so severe as to create a hostile work environment, and that the employer is liable. *See generally*, *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009). The conduct must be severe or pervasive enough, both subjectively and objectively, that a reasonable person would find it hostile. *Harris v. Forklift Systems*,

---

[6]Included among Plaintiff's exhibits are pages that Plaintiff has labeled "Salary History 2008-Present" and that list multiple dates every year that reflect "Placement in Nonpay" status, followed by other notations during the same year that reflect her "Return to Duty." (Doc. 26-1 at 77-78).

510 U.S. 17, 21-22 (1993).  Thus, Title VII is violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive enough to alter the conditions of the victim's employment and create an abusive working environment."  *Id.*, 510 U.S. at 21 (internal quotations and additional citations omitted).

In evaluating whether a plaintiff has established the type of severe or pervasive conduct that could establish a claim, a court can consider a variety of factors, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*, 510 U.S. at 23.    "Establishing harassment based on race discrimination requires the plaintiff to show either "(1) direct evidence of the use of race-specific and derogatory terms; or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace."  *Williams v. CSC Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011).

In her response in opposition to summary judgment, Plaintiff alleges that

[S]he was subjected to a hostile work environment based on race when on or about July 25, 2012, Ms. Wells discussed with another employee an incident of [Plaintiff's] alleged misconduct related to the issuance of the July 23, 2012 letter of admonishment.  Barbara Wells violated the [Plaintiff's] right to privacy by sharing details of disciplinary actions she initiated against [Plaintiff].  Barbara Wells was extremely unprofessional as a manager and also through her inappropriate relationship she maintained with her employees.

(Doc. 26 at 7, ¶14; *id* at ¶15).

Nothing in Plaintiff's response remotely conveys how this "unprofessional" overheard conversation constituted a race-based adverse employment action under prevailing Sixth Circuit case law.  The conduct of which Plaintiff complains is neither pervasive nor severe.  Such relatively inconsequential discrete acts, unmoored to any

explicit or imlpicit racial animus, cannot establish a "hostile work environment" as a matter of law. *See Ferguson v. Snow*, 185 Fed. Appx. 456, 463 (6th Cir. 2006) (affirming summary judgment on "hostile work environment" claim where plaintiff had alleged "only one incident of an overt racially discriminatory remark" by her manager, together with a handful of instances of non-selection and denial of promotional opportunities). *Accord, Hykes v. Geithner*, 2014 WL 4656373 at *8 (two examples of allegedly racially based hostile work environment failed to show racial discrimination that was severe or pervasive enough to create an environment that a reasonable person would find abusive and permeated with discriminatory treatment).

### 2. Lack of Any Similarly Situated Employee

Even if Plaintiff had come forward with a sufficiently adverse employment action, the Defendant would still be entitled to judgment because Plaintiff has failed to put forth evidence that similarly situated Caucasian employees were promoted in her place, or alternatively, that such similarly situated Caucasian employees were treated more favorably. "[T]he plaintiff must produce evidence that the relevant other employees are 'similarly situated in all respects.'" *Hollins v. Atlantic Co.*, Inc., 188 F.3d 652, 659 (6th Cir. 1999) (quoting *Mitchell*, 964 F.2d at 583). A plaintiff's failure to point to evidence concerning the similarities in position, responsibilities, job function, or level of performance, and reliance on his own conclusory statements about differential treatment, is insufficient to defeat summary judgment on this element. *Hykes v. Geithner*, 2014 WL 4656373 at *6 (W.D. Tenn. Sept. 15, 2014).

With respect to the Letter of Admonishment, Plaintiff argues that other employees "used curse[] words and had loud disturbances in the work area with their co-workers and never received any discipline or corrective actions." (Doc. 26 at 6, ¶12). However,

Plaintiff points to no evidence. She identifies only one employee - Linda Kelly – who allegedly "constantly cursed in the unit" but fails to identify any dates, times, or other context that would allow the undersigned to find Kelly similarly situated in any way. The lack of such evidence makes Plaintiff's argument wholly insufficient to defeat summary judgment.

### 3. Lack of Showing of Pretext

On the record presented, there is no need to consider pretext because Plaintiff has failed to prove her prima facie case. However, to the extent that any reviewing court would find that Plaintiff has made out a prima facie case of race discrimination, the undersigned finds undisputed evidence of legitimate, non-discriminatory reasons for the Letter of Admonishment and the alleged failure to promote, and no evidence of pretext.

Under *McDonnell Douglas,* if an employer puts forth evidence of a legitimate, nondiscriminatory reason for its action, the plaintiff must show that the reasons given were not the true reasons, but were instead a pretext for discrimination. The "ultimate burden of proving ... the intent to discriminate" remains with the plaintiff at all times. *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 707 (6th Cir.2006) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742 (1993)). "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler v. White's Fine Furniture,* 317 F.3d 564, 576–577 (6th Cir. 2003) (additional citation omitted).

Defendant has submitted evidence that after Plaintiff engaged in a second verbal disruption of a work meeting, within a few weeks of the counseling memorandum being

issued, further discipline was appropriate. The Letter of Admonishment was the least severe penalty listed in the progressive range of penalties recommended in the IRS's Penalty Guide for the type of misconduct for which Plaintiff was disciplined. Thus, Defendant has offered evidence that the Letter of Admonishment was written for a legitimate non-discriminatory reason and pursuant to IRS policy. (Doc. 26-1 at 41). Plaintiff's disagreement with her employer's application of that policy or interpretation of the behaviors that caused the Letter of Admonishment does not mean that Defendant's reasons lacked a basis in fact or were motivated by retaliatory intent. *See, e.g., Wright v. Murray Guard, Inc.*, 455 F.3d at 709 (affirming the district court's dismissal of a race discrimination claim). Plaintiff has offered no evidence of pretext.

Similarly, with respect to promotion, Defendant has offered evidence that there were no positions for which Plaintiff was qualified but was not selected during the relevant time frame. In addition, Defendant argues that Plaintiff would not have been selected for some promotions because of work performance issues as well as due to her history of engaging in workplace disruption. Defendant also has attached as exhibits affidavits that detail Plaintiff's difficulties in completing tasks assigned, and state that Plaintiff's substantive work could not be relied upon. (*See* Docs. 24-5, 24-9, 24-13m 24-25).

Plaintiff points to the affidavits of co-workers expressing general concern with the lack of promotional opportunities. Plaintiff claims that a "[m]ajority" of African-American employees complained about advancement opportunities under Bay, and that "90% of African-Americans in the Department did not like Ms. Bay and perceived her to be racist…." (*Id.* at ¶24, citing Doc. 26-1, Declaration of Jacqueline Gaines). Ms. Gaines did not work on the same team and was not supervised by Wells. Although the Department Head (Bay) was her second level manager, her Declaration does not directly

accuse Bay of being racist as Plaintiff suggests.[7]  In any event, such a broad statement of opinion by another employee, unsupported by any factual reference tied to Plaintiff's claim, would not be probative to show pretext, or any other element of Plaintiff's claim. *Accord Sudduth v. Geithner*, 2012 WL 1132748 at *3.

### B. Lack of Reprisal or Retaliation

#### 1. No Direct Evidence of Retaliation

Defendant is also entitled to summary judgment on Plaintiff's reprisal or retaliation claim.  Title VII's anti-retaliation provision makes it "an unlawful employment practice for an employer to discriminate against any of his employees ... because [she] has opposed any practice made [unlawful by Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).  A plaintiff may establish Title VII retaliation "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir. 2008))

Plaintiff alleges that prior to her transfer to the day shift, Wells gave McSayles a negative impression of Plaintiff.  When Plaintiff transferred to the day shift on February 26, 2013, Plaintiff states that McSayles spoke to her in a "hostile" manner.  Plaintiff further asserts (without any admissible evidence) that another team member informed her that McSayles told team members that Plaintiff was a troublemaker and that they should not

---

[7]In an attached email dated March 5, 2014, but not in her Declaration, Ms. Gaines implicitly accused Bay of racism when she states it "was sad to witness many talented people being ignored or bullied because of their ethnicity or opinions." (Doc. 26-1 at 36).

speak to her. (Doc. 26 at 10, ¶25-27, citing Doc. 26-1 at 143).[8] Plaintiff complains that McSayles watches "everything" she does, that Plaintiff is assigned the most difficult work, that management ignores her requests for detail opportunities, training, mentors, job-shadowing, and promotional opportunities.

Notwithstanding Plaintiff's subjective beliefs, she offers no evidence whatsoever that McSayles or anyone else subjected her to more scrutiny or to any adverse action because of her prior EEO complaint against Wells and/or Bay. The closest Plaintiff gets to direct evidence involves her allegation that after Plaintiff filed her EEO complaint of race discrimination, Bay stopped all communications with Plaintiff and responded to emails by stating: "Since you didn't accept the agreement terms in the mediation process then refer any questions or concerns to the EEO specialist." (Complaint). However, an examination of the record to which Plaintiff refers offers no hint of adverse action or retaliation but rather, a facially appropriate response by Bay to Plaintiff's email inquiry about terms discussed during the EEO mediation process. (Doc. 24-7).

Because Plaintiff has no direct evidence of retaliation, the Court turns to the *McDonnell Douglas* evidentiary framework. *Imwalle*, 515 F.3d at 544. Thus, Plaintiff must show that: (1) she engaged in protected activity under Title VII; (2) Defendant knew it; (3) Defendant thereafter took an adverse employment action against her, or she was subjected to "severe or pervasive retaliatory harassment" by a supervisor; and (4) there was a causal connection between the adverse or retaliatory employment action and her protected activity. *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995–96 (6th Cir. 2009);

---

[8]Plaintiff cites to a handwritten, unsworn and undated paper addressed "To Whom It May Concern" and purportedly signed by Ms. Smoot, stating that "prior to Cerissa Newbill arriving to our team we were advised that she was a trouble maker and we were not to talk to her or have any dealings with her." (Doc. 26-1 at 143). Even if this evidence were cognizable under Rule 56, such an isolated statement would be insufficient to show retaliation given Plaintiff's documented pre-EEO history of disruptive behavior.

*see also Randolph v. Ohio Dep't of Youth Servs*., 453 F.3d 724, 736 (6th Cir. 2006). On the record presented, Plaintiff can show only the first two elements: that she engaged in protected activity by filing an EEO complaint and that Defendant was aware of that activity. However, there is no evidence to suggest that McSayles took any specific adverse action against Plaintiff, or that the actions about which she complains amounted to "severe or pervasive" retaliatory harassment or a hostile work environment. Similarly, there is zero evidence of any "causal connection" between the alleged actions and Plaintiff's protected activity.

### 1. No Retaliatory Adverse Employment Action

"The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). Thus, Plaintiff still is required to show some form of adverse employment action to prove her retaliation claim. If there is no discrete adverse action, the plaintiff can allege (as Plaintiff does here) that her employer created a hostile work environment in retaliation for her protected activity.

In her response in opposition to summary judgment, Plaintiff argues that after she filed her EEO charge, she was subjected to "constant disciplinary actions and…an even more hostile-work environment." (Doc. 26 at 8-9, ¶18,19). Although the type of adverse employment action that can support a retaliation claim may be less significant than that required to support a primary race discrimination claim, Plaintiff still is required to show that "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington*, 548 U.S. at 68 (quoting

*Rochon v. Gonzoles*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *accord Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009).

Despite her vague reference to "constant disciplinary actions," Plaintiff points to no particular adverse employment action taken by McSayles to support her claim. Instead, she refers in a cursory fashion to a record of "disciplinary actions" in her exhibits.[9] However, there is no evidence that any of the alleged actions involved a change to Plaintiff's pay or status. Trivial slights are not enough. Here, none of the alleged disciplinary actions by McSayles are of sufficient frequency, quantity or severity to constitute the type of employment action that would have dissuaded a reasonable worker from making a claim of discrimination. *See also, Taylor v. Geithner*, 703 F.3d at 338 (written reprimand was not sufficiently adverse to show retaliation).

Plaintiff also briefly alludes to the Letter of Admonishment as retaliatory, but the Letter was issued by Wells and/or Bay, not McSayles. More importantly, the Letter of Admonishment was issued in July 2012, *before* Plaintiff engaged in pre-EEO counseling (in August), and therefore logically cannot support Plaintiff's retaliation claim. *See also Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (letter of admonishment without effect on compensation or conditions of employment not adverse retaliation);

A failure to promote can in some instances constitute a sufficiently adverse action to prove a retaliation claim. Here, however, Plaintiff fails to point to any evidence to

---

[9]See "Exhibit D" located at Doc. 26-1 at 43-53. The referenced exhibit includes the May 23, 2012 counseling memorandum, the July 23, 2012 Letter of Admonishment, and additional counseling memoranda dated March 23, 2016 (from an unrelated manager of a different team), an unsigned memorandum from McSayles directing Plaintiff to stop using electronic mail inappropriately effective September 2, 2014, a memorandum from McSayles referring to Plaintiff's inappropriate behavior during an attempted meeting on August 27, 2014, a non-disciplinary memo regarding Plaintiff's FMLA paperwork, and a May 6, 2016 memo from McSayles regarding Plaintiff's failure to follow a directive/unprofessional conduct.

demonstrate that she was qualified for specific positions, or that – in the cases in which she was qualified – a less qualified candidate or someone from a non-protected class was selected instead. Plaintiff also has failed to establish any indicia of retaliatory intent in her unsuccessful applications other than a relatively distant connection with the timing of her pre-complaint counseling/EEO activity. On the record presented, the temporal proximity alone is not sufficient. *Accord Ramsey v. Mnuchin*, 2017 WL 2775114 at *8 (S.D. Ohio June 27, 2017).

While Plaintiff may have believed that McSayles did not like her and treated her unfairly, there is not the slightest evidence to support her claim that he did so based on racial animus or retaliatory intent. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) ("Bowman, while alleging that Jahnke tormented him personally, has not show[n] that the non-sexual harassment had an anti-male bias…. Bowman has not alleged that Jahnke made a single comment evincing anti-male bias…. While he may have been subject to intimidation, ridicule, and mistreatment, he has not shown that he was treated in a discriminatory manner because of his gender"). In sum, Plaintiff's subjective perception of unfair or "hostile" treatment by McSayles is insufficient to defeat summary judgment in this case, in the absence of any legally sufficient adverse employment actions. *Accord Hykes v. Geithner*, 2014 WL 4656373 at *6-7 (plaintiff failed to offer any evidence beyond conclusory statements to establish that his performance evaluation was an adverse employment action or that he was subjected to severe or pervasive retaliatory harassment by a supervisor; actions about which plaintiff complained were not materially adverse).

## 2.  A Lack of Causal Connection

Defendant is also entitled to judgment as a matter of law because Plaintiff cannot prove a causal connection between her protected activity and Defendant's allegedly adverse actions.  "To establish a causal connection, a plaintiff must produce sufficient evidence for one to infer that the defendant would not have taken the adverse employment action had the plaintiff not engaged in the protected activity."  *Ramsey v. Mnuchin*, 2017 WL 2775114 at *8 (citing *Barrett v. Lucent Tech., Inc.*, 36 Fed. Appx. 835 (6th Cir. 2002)).

As stated, the July 23, 2012 Letter of Admonishment and overheard conversation between Wells and Kelly cannot support Plaintiff's retaliation claim because they occurred *prior to* her August 2012 EEO protected activity.  Many of the exhibits that document Plaintiff's unsuccessful applications for other positions at the IRS also preceded her EEO activity.  It goes without saying that events that occurred prior to Plaintiff's EEO activity cannot have occurred "because of" that protected activity.

Of course, some of Plaintiff's exhibits reflect that she applied for positions after August 2012, and she further alleges that McSayles subjected her to a "hostile work environment" after her EEO activity.  However, on the record presented, the loose temporal proximity of these events is not sufficient to support Plaintiff's retaliation claim.

It is undisputed that Plaintiff and McSayles, who began supervising Plaintiff after she transferred to the day shift in February 2013, had a difficult relationship.  However, there is no evidence at all, circumstantial or otherwise, that their interpersonal friction stemmed from any intention by McSalyes to retaliate against Plaintiff for her prior EEO complaint against Wells.  Rather, the exhibits attached to Plaintiff's opposition to summary judgment and Defendant's own exhibits reflect McSayles recounting how Plaintiff would

roll her eyes and make "derogatory comments" towards him, raise her voice, and become disruptive and disrespectful. (Doc. 26-1 at 50, 52). McSayles also described how Plaintiff directed "several unprofessional statements toward my Lead and myself." (*Id.* at 52).

McSayles was not alone in finding Plaintiff's workplace behavior to be disruptive, given that she was issued both a counseling memorandum and a Letter of Admonishment prior to her EEO activity. While being supervised by McSayles, an unaffiliated manger also instructed Plaintiff to "stay away from entity, Team 304" because she had "no business reason" to be there. (Doc. 26-1 at 48).

Plaintiff has offered no evidence of retaliatory intent by McSayles or any other manager other than her own speculation and conjecture, which is insufficient to proceed to trial. *See Snyder v. Pierre's French Ice Cream Co*., 589 Fed. Appx. 767, 771 (6th Cir. 2014) (personal belief, conjecture and speculation are insufficient to support inference of discrimination); *Mitchell v. Toledo Hosp.*, 964 F.2d at 585 (mere speculation ungrounded in fact is insufficient to defeat summary judgment); *accord Hykes v. Geithner*, 2014 WL 4656373 at *8 (even if plaintiff had cited to a source in the record that supported that the retaliatory actions he alleges established an adverse employment action, he still failed to establish a causal connection between the adverse actions and his protected activity).

### 3. No evidence of Pretext

As with Plaintiff's underlying discrimination claim, the undersigned has concluded that Plaintiff has failed to establish a prima facie case of retaliation. Only if Plaintiff had established her prima facie case on her retaliation claim would the burden of production shift to Defendant to articulate a legitimate nondiscriminatory reason for its adverse employment action. *Hunter,* 565 F.3d at 996. If the Defendant articulates such a reason, Plaintiff then must show that Defendant's reason is a pretext for retaliation. *Id.*

To establish pretext, a plaintiff making a Title VII retaliation claim must establish that her protected activity was "a but-for cause of the alleged adverse action by the employer." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014) (citing *U. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)); *see also Smith v. Ohio Dep't of Pub. Safety*, 997 N.E.2d 597, at ¶ 59 (Ohio App. 10th Dist. 2013) (adopting *Nassar*'s but-for causation standard for claims under Ohio retaliation law). Plaintiff must be able to point to evidence that is sufficient from which to draw an inference that the Defendant would not have taken the challenged actions had the Plaintiff not engaged in protected activity. *Allen v. Mich. Dept. of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999). She can do so by proving that the reason: "(1) has no basis in fact; (2) did not actually motivate the employer; or (3) was insufficient to warrant the adverse employment action." *McCowen v. Village of Lincoln Heights*, 624 Fed.Appx. 380, 383 (6th Cir. 2015) (additional citation omitted); *Wexler v. White's Fine Furniture,* 317 F.3d at 576.

On the facts presented, if any reviewing court disagrees with the undersigned and finds evidence to establish a prima facie case of unlawful retaliation, the undersigned alternatively recommends that summary judgment be granted to the Defendant because Defendant has come forward with legitimate, non-discriminatory and non-retaliatory reasons for all of the employment actions about which Plaintiff complains, and Plaintiff has offered no evidence of pretext.

It is not the role of this Court to second-guess the Defendant's legitimate exercise of its business judgment, where there is no evidence whatsoever that the Defendant's decision was colored by illegal discriminatory animus. The Sixth Circuit uses a modified "business judgment" or "honest belief" rule, whereby a court will permit an employer to

"establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Blizzard v. Marion Technical College*, 698 F.3d 275, 286 (6th Cir. 2012) (quoting *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010)(additional internal quotation marks and citation omitted). Plaintiff's disagreement with Defendant's business judgment "does not create sufficient evidence of pretext in the face of the substantial evidence that [the employer] had a reasonable basis to be dissatisfied." *Blizzard*, 698 F.3d at 286 (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001)).

As previously stated, temporal proximity alone is very rarely sufficient to establish a causal connection in the Sixth Circuit. *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (quoting *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007)). In the rare instances in which temporal proximity has been sufficient to establish pretext, the temporal proximity between the protected activity and the adverse employment action is extremely close. *See id.*, 609 F.3d at 401 (recognizing cases involving "extremely close" periods of time, typically "less than six months"); *see also Seeger v. Cincinnati Bell Telephone Co.,* 681 F.3d 274, 285 (6th Cir. 2012) ("Unlike its role in establishing a prima facie case, 'the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.' ") (citation omitted). On the record presented, Plaintiff's lack of any evidence of pretext merely adds to the fatal flaws evident in her claim.

### III. Conclusion and Recommendation

For the stated reasons, the undersigned hereby **RECOMMENDS** that the Defendant's Motion for Summary Judgment (Doc. 24) be **GRANTED.** Plaintiff's complaint should be dismissed with prejudice, and this case be **CLOSED**.

s/ Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CERISSA C. NEWBILL,                                   Case No. 1:17-cv-430

              Plaintiff,                              Barrett, J.
                                                      Bowman, M.J.
       v.


SECRETARY, DEPARTMENT OF TREASURY,

              Defendant.


**NOTICE**

       Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).